UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

ELIZABETH MÉNDEZ-SANTIAGO,
JUAN CARLOS DÍAZ-MORENO, JPDM,

    Plaintiffs,

v.

HOSPITAL ESPAÑOL AUXILIO
MUTUO DE PUERTO RICO, INC., LUIS
A. CRUZ-MIRANDA, SIMED, JANE
DOE, CONJUGAL PARTNERSHIP
CRUZ-DOE,

    Defendants.

Civil No. 14-1548 (JAF)

**OPINION AND ORDER**

Plaintiffs Elizabeth Méndez-Santiago ("Méndez-Santiago"), Juan Carlos Díaz-Moreno ("Díaz-Moreno"), and minor JPDM (also called "the Baby") (collectively "Plaintiffs") are suing defendants Hospital Español Auxilio Mutuo de Puerto Rico, Inc. ("the Hospital"), Luis A. Cruz-Miranda ("Cruz-Miranda" or "the Doctor"), SIMED, Jane Doe, and Conjugal Partnership Cruz-Doe (collectively "Defendants") in a tort action for alleged medical malpractice under articles 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. §5141 and §5142. (ECF No. 1.) Jurisdiction arises under diversity. (ECF No. 1.) The Hospital asks for partial summary judgment. (ECF No. 17.) For the following reasons, we deny their motion for summary judgment.

**I.**

**Background**

When considering a summary judgment motion, we typically view all facts in the light most favorable to the non-moving party. Therefore, to the extent that any facts are

disputed, the facts set forth below represent Plaintiffs' version of the events at issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This is true so long as Plaintiffs' asserted facts properly comply with Local Rues 56(c) and (e). *See Cosme-Rosado v. Serrando-Rodriguez*, 360 F.3d 42, 45 (1st Cir. 2004). We keep our recitation fairly concise, as we know that the details will be fleshed out in great detail at trial.

Méndez-Santiago received pre-natal care through her private physician. (ECF No.19 at 2.) When she went into labor on November 14, 2012, the Doctor instructed her to go to the Hospital. (ECF No. 19 at 3.) Méndez-Santiago and her husband, Díaz-Moreno, arrived at the Hospital around 7:00 P.M. (ECF No. 38 at 4.) The Doctor arrived at the Hospital at 11:00 P.M. (ECF No. 19 at 3.) The Baby's heart rate began to have abnormal tracing at approximately 1:00 A.M., and late decelerations repetitively occurred. (ECF No. 38 at 3.) Late decelerations are associated with the incapacity of the placenta to adequately oxygenate the baby. (ECF No. 38 at 17.) However, the Hospital does not have any protocols established regarding the using and monitoring of the fetal heart rate monitor and regarding the course of action to be followed when an abnormal tracing is detected. (ECF No. 38 at 16.) There were no tracings of the fetal heart monitor or uterine contractions from 7:51 A.M. until 9:56 A.M., and the medical records are devoid of any recordings during this time. (ECF No. 38 at 16.) The Doctor has admitted that he was not in the room with Plaintiffs throughout the night. (ECF No. 38 at 5.) At 9:56 A.M., the Baby was born "dead" and was resuscitated. (*See* ECF No. 38 at 8.) The

Baby suffered hypoxic-ischemic encephalopathy.  (ECF No. 38 at 15.)  This condition led to very severe disability and severely shortened life expectancy.  (*See* ECF No. 1.)

On July 10, 2014, Plaintiffs filed a complaint against Defendants in federal court.  (ECF No. 1.)  On June 12, 2015, the Hospital filed the instant motion for partial summary judgment, a statement of uncontested material facts, and a memorandum of law.  (ECF Nos. 17, 19, 20.)  On June 29, 2015, Plaintiffs filed a response, a memorandum of law, and a statement of contested facts.  (ECF Nos. 36 - 38.)  On July 3, 2015, the Hospital filed a reply and supplemental motions.  (ECF Nos. 42 - 45.)  On July 9, 2015, Plaintiffs filed a response.  (ECF No. 46.)  On July 17, 2015, the Hospital filed a sur-reply.  (ECF No. 64.)  Plaintiffs retained two experts to provide testimony supporting their motions: Dr. José Gorrín-Peralta ("Gorrín-Peralta") as their medical obstetrics expert witness, and Mrs. Michele Holzman, RNC-OB, C-EFM, as their nursing care witness.  (ECF No. 19 at 5; ECF No. 38 at 11.)

## II.

## Analysis

Defendants are entitled to summary judgment on a claim if they can show that there is no genuine dispute over the material facts underlying that claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  We must decide whether a reasonable jury could find for Plaintiffs in any of their claims when all reasonable inferences from the evidence are drawn in their favor.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

A recent First Circuit case laid out the standards of a medical malpractice case tried in Puerto Rico:

> This diversity suit is governed by the substantive law of Puerto Rico. In Puerto Rico, as in many jurisdictions, in order to prevail on a medical malpractice claim, a party must establish (1) the duty owed; (2) an act or omission transgressing that duty; and (3) a sufficient causal nexus between the breach and the harm. In the context of medical malpractice actions, the Puerto Rico Supreme Court has explained that a physician's duty is to offer his or her patient that medical care, attention, skill, and protection that, in light of the modern means of communication and education, and pursuant to the current status of scientific knowledge and medical practice, meets the professional requirements generally acknowledged by the medical profession. To prevail, a plaintiff must prove by a preponderance of the evidence both that the standard of care was not met, and that the failure to meet an acceptable standard caused the harm.

*Pages-RA.M.irez v. RA.M.irez-Gonzalez*, 605 F.3d 109, 113 (1st Cir. 2010) (internal citations omitted).

Another First Circuit case is perfectly on point. *Marcano Rivera v. Turabo Medical Center Partnership*, 415 F.3d 162 (1st Cir. 2005), was a case in which a fetal heartrate was inadequately monitored and the baby was born with permanent neurological damage as a result of neonatal asphyxia. Gorrín-Peralta was even a medical expert in that case. *Id.* The First Circuit accepted the testimony from Gorrín-Peralta and another medical expert that:

> [T]he standard of care requires monitoring high-risk deliveries, including induced labor, every 15 minutes. Monitoring includes evaluating both the fetal heart rate and uterine contraction information provided by the fetal monitor's paper tracings and the fetal heart rate information provided by the fetal monitor's digital display. Monitoring is a shared responsibility of the doctor and the nurse; when the doctor is not present, the nurse is in charge of the monitoring. Dr. Gorrín's testimony on this point was corroborated by HIMA's expert Dr. José Vargas Cordero, who testified that when the doctor is not present, the nurse is in charge of checking both the tracing and the digital monitor, and that if the nurse notices an abnormal reading, she must call the doctor.

*Marcano Rivera v. Turabo*, 415 F.3d at 168.  We hold that a reasonable jury could find that the Hospital fell below the standard of care.  *See Scott v. Harris*, 550 U.S. at 380. The First Circuit also wrote that to "establish causation under Puerto Rican law, a plaintiff must prove, by a preponderance of the evidence, that the physician's negligent conduct was the factor that most probably caused harm to the plaintiff." *Marcano Rivera v. Turabo*, 415 F.3d at 168 (internal citations omitted).  We hold that a reasonable jury could find that the Hospital's negligent conduct was the factor that most probably caused harm to the Plaintiff.  *See Scott v. Harris*, 550 U.S. at 380.

### III.

### Conclusion

For the foregoing reasons, the Hospital's motion for partial summary judgment (ECF No. 17) is **DENIED**.  The Hospital's supplemental motions in support of this request (ECF No. 42, 43, 44) are **MOOT**.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 5th day of August, 2015.

S/José Antonio Fusté<br>JOSE ANTONIO FUSTE<br>U. S. DISTRICT JUDGE